2010 ND 138

**INVESTORS TITLE INSURANCE COMPANY, Plaintiff**

v.

**David F. HERZIG, Southeastern Shelter Corporation, Alphild Herzig, Defendants**

**On Appeal**

**Southeastern Shelter Corporation, Plaintiff, Appellee and Cross–Appellant**

v.

**Sheldon Smith, Personal Representative of the Estate of Alphild Herzig, substituted for Alphild Herzig, Deceased, Defendant, Appellant and Cross–Appellee.**

Nos. 20090051, 20090052.

Supreme Court of North Dakota.

July 13, 2010.

Rehearing Denied Aug. 17, 2010.

864

Robert S. Rau, Minot, N.D., for plaintiff, appellee and cross-appellant.

Arnold V. Fleck, Bismarck, N.D., for defendant, appellant and cross-appellee.

VANDE WALLE, Chief Justice.

[¶ 1]   In this consolidated appeal, the personal representative of the estate of Alphild Herzig appealed and Southeastern Shelter Corporation ("Southeastern") cross-appealed from district court orders entered in two related cases.  The appeal-

ed orders in each case denied the personal representative's motions to dismiss Alphild Herzig as a party, but granted the personal representative's motion to substitute the estate's personal representative for Herzig.

[¶ 2]   We affirm the district court's substitution orders in both cases, granting substitution of the personal representative of the Alphild Herzig estate for Alphild Herzig.  However, we remand to the district court to determine the amount of remedial sanction necessary to compensate Southeastern under the court's 2006 contempt orders.

I.  Facts

[¶ 3]   This long-running, tortured and unduly complicated saga involves Southeastern's attempts in North Dakota to collect on a 1989 North Carolina money judgment entered against David Herzig.  Since this consolidated appeal involves two underlying cases, we discuss the differing procedural postures leading to the present appeals.

A.  Supreme Court No. 20090051
("1998 Case")

[¶ 4]   The 1998 case involves proceedings supplementary to execution of the 1989 North Carolina judgment and was commenced in North Dakota in 1998, after Southeastern instituted proceedings under the Uniform Enforcement of Foreign Judgments Act, N.D.C.C. ch. 28–20.1, by filing the 1989 North Carolina judgment for enforcement against David Herzig.  In the North Carolina action, Southeastern was named as a co-defendant with David Herzig, and Southeastern was ultimately awarded a $149,598.13 judgment against David Herzig under its cross claim.

[¶ 5]   In April 2002, after apparent unsuccessful initial attempts to collect on the

judgment and upon retention of new counsel, Southeastern moved for a debtor's examination in aid of execution under N.D.C.C. ch. 28–25. In its motion, Southeastern requested an order for the judgment debtor, David Herzig, to appear before the district court to be examined. Southeastern also requested an order compelling David Herzig's parents, Floyd and Alphild Herzig, to produce documents and to testify under oath under N.D.C.C. § 28–25–04. David Herzig responded to Southeastern's motion, challenging, among other things, the underlying North Carolina judgment.

[¶ 6] After a hearing the district court issued a September 2002 order, granting Southeastern's motion. The court acknowledged Southeastern's request under N.D.C.C. § 28–25–04, to compel the examination of Floyd and Alphild Herzig and concluded that Southeastern made a sufficient showing supporting a debtor's examination of David Herzig, Floyd Herzig, and Alphild Herzig. The court stated the Herzigs appeared to have information pertinent to Southeastern's attempt to execute on the judgment, including "alter ego" matters. The court also ordered David Herzig, Floyd Herzig, and Alphild Herzig to provide documents requested by Southeastern in its subpoena duces tecum and required Southeastern to give appropriate notice of examination under N.D.C.C. § 28–25–07. Although it is unclear whether Alphild Herzig was personally served with this order, the record suggests that she was not.

[¶ 7] In October 2002, Southeastern filed a notice of a 2000 North Carolina default judgment that Southeastern obtained against David Herzig, entered in a North Carolina action commenced in 1999, purportedly to renew the 1989 judgment. In March 2003, Southeastern moved the court for sanctions, to compel discovery, and for contempt against David Herzig. In its brief in support of this motion, in addition to David Herzig's alleged lack of compliance with discovery, Southeastern asserted that Floyd Herzig had died and various attempts to serve Alphild Herzig had been unsuccessful. David Herzig responded to this motion in April 2003, asserting in part that Southeastern had attempted to serve Alphild Herzig by serving David Herzig's attorney, that David Herzig's attorney had never represented Alphild Herzig, and that it was not David Herzig's fault Southeastern could not serve Alphild Herzig. A hearing on the request for sanctions was held in December 2003.

[¶ 8] Almost seven months later, in July 2004, the district court, apparently on its own motion, entered an order under N.D.R.Civ.P. 19, joining Alphild Herzig to the action. In its order, the court stated that David Herzig asserted at the December 2003 hearing that Alphild Herzig should be made a party to the action, and the court agreed. The court found that Alphild Herzig's interest in the judgment against her son was "material and substantial" if Southeastern established David Herzig was the "alter ego" of numerous corporations in which Alphild Herzig is an owner or shareholder. The court concluded Alphild Herzig had a material interest in the action and should be joined "as a party defendant." In August 2004, an affidavit of personal service was filed, stating Alphild Herzig had been personally served with the court's "Order on Rule 19(a), Joinder of Party." In October 2004, Alphild Herzig's attorney filed a notice of appearance in the action on Alphild Herzig's behalf, which asserted the notice was "not intended to and does not waive any

defenses available to the above defendant including all defenses under [N.D.R.Civ.P. 12(b) ]."

[¶ 9] In January 2005, Southeastern moved the district court for an order sanctioning Alphild Herzig's failure to comply with Southeastern's request for production and subpoena duces tecum, compelling Alphild Herzig to fully answer Southeastern's discovery, and directing the award of attorney fees under N.D.R.Civ.P. 33, 34, and 37. Alphild Herzig, through her attorney, filed a response to Southeastern's motion arguing that a party's failure to respond to only some of the interrogatories, or a party's evasive or incomplete answers to interrogatories are properly addressed under N.D.R.Civ.P. 37(a) and (b), rather than N.D.R.Civ.P. 37(d). Alphild Herzig argued that before the court imposed sanctions for a party's failure to answer interrogatories, a party must first violate a discovery order, stating "that while Southeastern may bring its motion to compel discovery under Rule 37(a) and request sanctions, they do not allow for sanctions to be entered against Alphild in this instance." Alphild Herzig's response also asserted Southeastern had neither offered any proposal to resolve the discovery dispute, nor attempted to resolve the dispute regarding Alphild's prior responses and answers to the discovery before seeking court action.

[¶ 10] After an April 2005 hearing, the district court issued an order that, on stipulation of counsel, withheld granting Southeastern's motion for sanctions for 20 days to give Alphild Herzig time to respond to the discovery requests and that, at the expiration of 20 days, either party could request further hearing on Southeastern's motion. In late May 2005, Southeastern filed a renewed motion for sanctions and to compel discovery under N.D.R.Civ.P. 33, 34, and 37. The renewed motion sought to sanction Alphild Herzig for her asserted failure to comply with Southeastern's request for production of documents and subpoena duces tecum, to compel her to answer Southeastern's discovery, and to award Southeastern attorney fees.

[¶ 11] In June 2005, Alphild Herzig, through her attorney, resisted Southeastern's motion, asserting that she had submitted supplemental answers to Southeastern's interrogatories and requests for production of documents, that her objections under N.D.R.Civ.P. 26 were in good faith, that she did not have material and information Southeastern was requesting, and that Southeastern was requesting she answer discovery for the true party in the case, David Herzig. Alphild Herzig also asserted, "Southeastern fails to understand that Alphild is not a party to this case and she should not be subjected to the continual harassment of Southeastern." She asserted that she had done her best to provide the information and that Floyd Herzig, who died in 2003, had been in a greater position to provide information. Notwithstanding the July 2004 order, she asserted: "The Court has already determined that Alphild is not a party to this case and as such she should not be subjected to the continual displays of contempt asserted upon her by Southeastern." In August 2005, Alphild Herzig made a motion to seal the record, which was opposed by Southeastern. The district court entered an order in March 2006, sealing an affidavit of Alphild Herzig.

[¶ 12] In March 2006, the district court issued an order compelling additional discovery from Alphild Herzig. In June

2006, Southeastern brought another motion to compel discovery under N.D.R.Civ.P. 33, 34, and 37. Southeastern sought an order sanctioning Alphild Herzig $750 a day for failure to comply with the court's prior order directing answers and production of documents, compelling Alphild Herzig to fully answer discovery as ordered by the court, joining Alphild Herzig to the action as a defendant and judgment debtor, and holding Alphild Herzig in contempt of court, and directing her to pay attorney fees.

[¶ 13] Alphild Herzig resisted Southeastern's motion stating, "It is brought to the Court's attention that [Southeastern] improperly noticed this action to David Herzig through the attorney for Alphild Herzig. Alphild Herzig is not a defendant to this action and her attorney ... is not the attorney for the defendant, David Herzig." Alphild Herzig asserted that she had in fact attempted to comply with discovery and that a $750 a day sanction was harsh and unduly prejudicial.

[¶ 14] The district court entered an order, dated June 26, 2006, granting sanctions against Alphild Herzig contingent on submission of a checklist to the court to provide a daily sanction for each item not provided. In the order, the court also denied Southeastern's request to "join Alphild Herzig in as a Defendant and Judgment Debtor," held Alphild Herzig in contempt of court, and directed an award of attorney fees in the amount of $5,000. On July 13, 2006, the court entered a "Checklist Order" dated July 7, 2006, identifying various items to be produced by Alphild Herzig and ordering her to pay a total of $1,400 in daily sanctions for items not subsequently produced by either July 31 or August 31, 2006.

[¶ 15] In August 2006, Alphild Herzig, again through her attorney, moved the

district court to release the sanctions, filed a brief in support of the motion, and requested a hearing. Southeastern filed a response to Alphild Herzig's motion. In May 2007, the court entered an order denying Alphild Herzig's motion for release from sanctions. The order indicated that although the brief had requested a hearing, none had been scheduled so the court decided the motion on the brief. Also, in May 2007, Alphild Herzig's attorney filed a motion to withdraw as counsel, which the court granted in June 2007.

[¶ 16] In February 2008, Alphild Herzig's present attorney filed a notice of appearance, which stated that service of further documents on the attorney constitutes service on Alphild Herzig in this action under N.D.R.Civ.P. 5. In June 2008, Alphild Herzig moved for an order dismissing her as a party in the action and vacating the 2004 order joining her as a party and all subsequent orders issued against her, including the 2006 contempt orders. Alphild Herzig argued that the court lacked subject matter jurisdiction to join her, rendering void the order joining her as a party defendant and all subsequent orders entered against her. Southeastern opposed Alphild Herzig's motion to dismiss. However, before the court ruled on the motion, Alphild Herzig died on June 5, 2008, and a statement acknowledging her death was subsequently filed with the court.

### B. Supreme Court No. 20090052 ("2008 Case")

[¶ 17] In January 2008, Southeastern commenced a separate action in the district court against Alphild Herzig, seeking $735,400 that Southeastern alleged was then owing under 2006 contempt orders entered in the 1998 case. In March 2008, Southeastern moved for summary judg-

ment asserting the action was to recover on the debt from the contempt orders in the 1998 case and there was no way for Southeastern to enforce the orders as a money judgment in the 1998 case "as Alphild is not a party therein."

[¶ 18] Alphild Herzig subsequently answered and moved to dismiss Southeastern's action, arguing the district court lacked subject matter jurisdiction to join her as a defendant in the 1998 case, rendering the orders entered against her in that action, including the 2006 contempt orders, void. Alphild Herzig alternatively claimed that Southeastern failed to state a claim for relief, arguing there was no actual controversy before the court since Southeastern's claims were not ripe for adjudication in a separate action because no final judgment or order had been entered in the 1998 case adjudicating all of the claims, rights, and liabilities of the parties.

[¶ 19] Alphild Herzig also contested Southeastern's motion for summary judgment, asserting genuine issues of material fact existed regarding whether Alphild Herzig owed any money under the 2006 contempt orders entered in the 1998 case and, if she did owe money, the amount necessary to compensate Southeastern for her purported contempt. In May 2008, Southeastern responded to the motion to dismiss, and Alphild Herzig replied to Southeastern's response. In June 2008, Alphild Herzig's attorney filed a statement with the court that Alphild Herzig had died on June 5, 2008.

### C. Substitution Orders in the 1998 and 2008 Cases

[¶ 20] After Alphild Herzig's death, Southeastern filed motions in August 2008 in both cases, seeking to substitute some-

one other than the current personal representative of Alphild Herzig's estate, who had initially been Alphild Herzig's attorney in the 1998 case, but had withdrawn in 2007. Southeastern objected to the substitution of the current personal representative for Alphild Herzig, asserting the personal representative had conflicts of interest. The personal representative responded in both cases, reiterating its previously raised grounds to dismiss or, in the alternative, to substitute the personal representative as a defendant in both cases.

[¶ 21] After a hearing on January 12, 2009, the district court entered orders in both cases, denying the personal representative's motions to dismiss the claims against Alphild Herzig and naming the personal representative for Alphild Herzig's estate as a substitute defendant. Both the personal representative of the estate and Southeastern appealed from the district court orders.

### II. Appealability

[¶ 22] The personal representative argues that the orders substituting the personal representative as a defendant for Alphild Herzig in both the 1998 and 2008 cases are appealable. Southeastern asserts that while these orders are not generally appealable, they should nonetheless be reviewed now.

[¶ 23] Before we consider the merits of an appeal, we first determine whether this Court has jurisdiction. *Brummund v. Brummund,* 2008 ND 224, ¶ 4, 758 N.W.2d 735; *North Dakota State Elec. Bd. v. Boren,* 2008 ND 182, ¶ 4, 756 N.W.2d 784; *Sanderson v. Walsh County,* 2006 ND 83, ¶ 4, 712 N.W.2d 842. Only judgments and decrees constituting a final judgment and specific orders enumerated

by statute are appealable. *Mann v. North Dakota Tax Comm'r*, 2005 ND 36, ¶ 8, 692 N.W.2d 490; *Brummund*, at ¶ 5. The right to appeal is governed solely by statute, and we will take notice of the lack of jurisdiction and dismiss an appeal if there is no statutory basis to hear the appeal. *Mann*, at ¶ 7. This Court utilizes a two-step analysis to evaluate the finality of orders for review:

"First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b), N.D.R.Civ.P., [if applicable,] must be complied with. If it is not, we are without jurisdiction."

*Matter of Estate of Stensland*, 1998 ND 37, ¶ 10, 574 N.W.2d 203 (quoting *Gast Constr. Co., Inc. v. Brighton P'ship*, 422 N.W.2d 389, 390 (N.D.1988) (citations omitted)).

■ [¶ 24] The purpose of N.D.R.Civ.P. 54(b) is to facilitate our long-standing policy to discourage piecemeal appeals of multi-claim or multi-party litigation. *See Union State Bank v. Woell*, 357 N.W.2d 234, 237 (N.D.1984). Under N.D.R.Civ.P. 54(b), the district court is authorized to enter a final judgment adjudicating fewer than all claims of all parties when the court expressly concludes there is no just reason for delay and expressly directs the entry of judgment. *See Brummund*, at ¶ 5; *Choice Fin. Group v. Schellpfeffer*, 2005 ND 90, ¶ 7, 696 N.W.2d 504.

[¶ 25] This consolidated appeal includes appeals from two separate substitution orders in two underlying cases, in which the district court denied dismissal of the cases and ordered substitution of the personal representative of Alphild Herzig's estate. Although the cases are in different procedural postures, in neither case did the parties request certification of the orders under N.D.R.Civ.P. 54(b), nor did the court certify the orders as final. The substitution order in the 1998 case involved post-judgment proceedings supplementary to the execution of the judgment under N.D.C.C. ch. 28–25. In the context of our N.D.R.Civ.P. 54(b) jurisprudence, we conclude post-judgment proceedings are akin to unsupervised probate proceedings for purposes of determining appealability.

[¶ 26] We have held N.D.R.Civ.P. 54(b) is applicable in probate proceedings. *See Matter of Estate of Erickson*, 368 N.W.2d 525, 528 (N.D.1985); *First Trust Co. of North Dakota v. Conway*, 345 N.W.2d 838, 841–42 (N.D.1984). Under N.D.C.C. § 30.1–02–06.1, the rules applicable to appeals in equity cases govern the right to appeal probate orders. *Matter of Estate of Sorensen*, 406 N.W.2d 365 (N.D.1987). "Once jurisdiction is established under [N.D.C.C. § 28–27–02], Rule 54(b)'s separate requirements must also be met, if applicable. Parties in probate cases bear the duty of requesting a Rule 54(b) order or certification if they seek an appeal." *Id.* (citation omitted).

■ [¶ 27] "[I]n an unsupervised administration, 'each proceeding before the court is independent of any other proceeding involving the same estate,' although 'petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be finally granted without delay.'" *Matter of Estate of Starcher*, 447 N.W.2d 293, 295 (N.D.1989) (quoting N.D.C.C. § 30.1–12–07). Thus, in an unsupervised administration, finality "requires a con-

cluding order on each petition." *Estate of Starcher*, 447 N.W.2d at 295; *see also Matter of Estate of Stuckle*, 427 N.W.2d 96 (N.D.1988) (Meschke, J., concurring).

■ [¶ 28] "In an unsupervised administration, an order determining some, but not all, of one creditor's claims against an estate is not appealable without a Rule 54(b) certification." *Estate of Starcher*, 447 N.W.2d at 296 (citing *Estate of Stuckle, supra*); *see also Estate of Stensland*, 1998 ND 37, ¶ 14, 574 N.W.2d 203 ("Sometimes, an order in an unsupervised probate can be appealable without a N.D.R.Civ.P. 54(b) certification, unless the order decides some, but not all, of one person's disputes in an estate."). In *Matter of Starcher*, at 296, this Court held that a "workable reconciliation of Rule 54(b) and the 'separate proceeding' provisions of an unsupervised administration is to treat a determination of *all* of one creditor's claims against an estate as a separate proceeding which does not need a Rule 54(b) certification." (emphasis in original).

■ [¶ 29] In the context of post-judgment proceedings, a judgment creditor may engage in multiple "separate proceedings" in the district court over the life of a judgment, in efforts to pursue discovery and collect on the judgment. Where a judgment creditor or debtor has raised multiple issues relating to a post-judgment proceeding, an appeal from an order resolving some, but not all, of the issues is premature without N.D.R.Civ.P. 54(b) certification. However, where an order resolves all issues in a separate post-judgment proceeding, N.D.R.Civ.P. 54(b) certification is not necessary. Finality, therefore, requires a concluding order for each proceeding commenced in post-judgment enforcement actions.

[¶ 30] For appellate review purposes, post-judgment proceedings have been treated as separate litigations from the action which produced the underlying judgment. *See, e.g., In re Joint Eastern and S. Dists. Asbestos Litigation*, 22 F.3d 755, 760 (7th Cir.1994); *see also* 19 James Wm. Moore & George C. Pratt, *Moore's Federal Practice* § 202.13[1] (3d ed.2009); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3916 (2d ed.1992). "Orders relating to the enforcement, execution, or interpretation of a final judgment ordinarily should be final upon complete disposition of all present related issues.... Orders denying discovery in aid of execution also are appealable, but orders granting discovery are not appealable if review is available by way of disobedience and contempt." 15B *Federal Practice & Procedure* § 3916. "However, the denial of a request for postjudgment discovery has been held to be appealable because no other route for obtaining appellate review is available." 19 *Moore's Federal Practice* § 202.13[1]; *see also Central States, Southeast and Southwest Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir.1992); *Fehlhaber v. Fehlhaber*, 664 F.2d 260, 262 (11th Cir. 1981).

■ [¶ 31] On appeal, the personal representative contends the district court's orders granting substitution are appealable, relying on this Court's decision in *Missouri Slope Livestock Auction, Inc. v. Wachter*, 113 N.W.2d 222 (N.D.1962). In *Wachter*, at 223–24, the district court granted a motion for substitution of a personal representative for a deceased party in a pending action, which had been opposed on grounds the cause of action did not survive. This Court concluded the

order granting substitution was an appealable order under N.D.C.C. § 28–27–02(5), which provides that an order is appealable "which involves the merits of an action or some part thereof." *Wachter*, at 224. This Court reasoned that when the district court granted the motion and issued the order, the court "necessarily determined that the claim was not extinguished by the death [of the defendant] and that the cause of action survived." *Id.* at 225. This Court explained that while the determination did not relate to the subject matter of the action, it related "directly to the cause of action and its continued existence and intrinsically involve[d] the merits." *Id.* This Court concluded the order granting substitution was appealable, affirmed the order of substitution, and remanded to the district court for further proceedings. *Id.*

[¶ 32] However, *Wachter* predates our present application of N.D.R.Civ.P. 54(b), and in *B.H. v. K.D.*, 506 N.W.2d 368, 372 n. 3 (N.D.1993), we discussed our shift in the application of N.D.R.Civ.P. 54(b):

> Prior to cases such as *Gillan v. Saffell*, 395 N.W.2d 148 (N.D.1986) and *Gast Constr. Co. v. Brighton Partnership*, 422 N.W.2d 389 (N.D.1988), this Court would often times end its discussion of the appealability of an order after we found that the order fit neatly into Section 28–27–02, N.D.C.C. However, today, such an analysis is incomplete, and found only in cases that predate the " 'shift in our appellate procedure regarding the applicability of Rule 54(b) certification to orders that are appealable pursuant to Section 28–27–02, N.D.C.C.' " *Peterson v. Zerr*, 443 N.W.2d 293, 296 (N.D.1989) (quoting *Harmon Motors v. First Nat'l Bank & Trust*, 436 N.W.2d 240, 241 (N.D.1989)). As a result of the changes occurring in

our more recent case law, "our appellate procedure has now evolved into a bright line requiring the finality of Rule 54(b) certification for civil appeals involving multi-claim or multi-party actions." *Sargent County Bank v. Wentworth*, 434 N.W.2d 562, 564 n. 2 (N.D.1989).

This Court's decision in *Wachter* is one of the earlier cases that ended its discussion of appealability after finding the order fit within N.D.C.C. § 28–27–02. To the extent that *Wachter* permits an appeal from an order granting substitution without additionally considering N.D.R.Civ.P. 54(b), it is now overruled. *Compare Zerr*, 443 N.W.2d at 296.

[¶ 33] The personal representative requests, however, that if this Court overrules *Wachter*, the decision should only be applied prospectively. Under the circumstances, we agree, and we apply this decision prospectively. *See, e.g., Vetter v. North Dakota Workers Comp. Bur.*, 554 N.W.2d 451, 454 (N.D.1996) (considering *Chevron* factors and concluding decision to compel compliance with specificity requirements under N.D.C.C. § 28–32–15(4) should be applied prospectively). We hold that the district court's orders granting substitution in these cases are reviewable and that we have jurisdiction to review the court's decision.

III. Abatement of Contempt Sanctions

[¶ 34] The personal representative argues the district court erred in failing to dismiss Alphild Herzig as a defendant in the 1998 case and failing to dismiss the 2008 case against Alphild Herzig, asserting the contempt proceedings against Herzig in the 1998 case abated or were extinguished by her death.

[¶ 35] Rule 25(a)(1), N.D.R.Civ.P., states that "[i]f a party dies and the claim

is not thereby extinguished, the court may order substitution of the proper parties." Further, N.D.R.Civ.P. 25(a)(2) provides:

In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

"After a verdict is rendered or an order for judgment is made in any action, such action shall not abate by the death of any party, but the case shall proceed thereafter in the same manner as in cases where the cause of action survives by law, and substitution of parties shall be allowed as in other cases." N.D.R.Civ.P. 25(a)(3). *See Jochim v. Jochim*, 2006 ND 186, ¶¶ 7–9, 721 N.W.2d 25 (Rule 25(a)(3), N.D.R.Civ. P., "does not create an exception to the general rule that the death of a party to a divorce action, prior to entry of the final decree of divorce, abates the action and leaves nothing for the district court to decide."); *Thorson v. Thorson*, 541 N.W.2d 692, 696 (N.D.1996) ("Upon the [party's] death, there was no longer a marriage for the [district] court to dissolve with a judgment decreeing a divorce," in that the death destroys the court's jurisdiction since there is no marriage on which the decree can work.). *See also* N.D.C.C. § 30.1–18–03(3) ("Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this state at the decedent's death has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as the decedent had immediately prior to death.").

[¶ 36] Section 28–01–26.1, N.D.C.C., states: "No action *or claim for relief*, except for breach of promise, alienation of affections, libel, and slander, abates by the death of a party or of a person who might have been a party had such death not occurred." (Emphasis added.) This section thus provides for the survival of an action or claim, and "[s]urvival statutes 'are remedial in nature....'" *Weigel v. Lee*, 2008 ND 147, ¶ 12, 752 N.W.2d 618 (quoting *Sheets v. Graco, Inc.*, 292 N.W.2d 63, 66–67 (N.D. 1980)). Before granting a N.D.R.Civ.P. 25 motion for substitution of a personal representative in place of a deceased party in a pending action, the district court must determine: 1) The party is dead, 2) the claim or cause of action was not extinguished by the death, and 3) the party sought to be substituted is the deceased party's successor or representative. *Wachter*, 113 N.W.2d at 224.

## A. Substitution in 1998 Case

[¶ 37] The personal representative argues that the claims against Alphild Herzig and her personal representative stem from her being named as a party in the 1998 case and the subsequent 2006 contempt orders entered against her for alleged failure to produce certain documents in response to requests for production of documents that were served on her. The district court's 2006 orders found Alphild Herzig in contempt of court, imposed a daily sanction of $1,400 until she produced certain documents, and awarded Southeastern $5,000 in attorney fees.

[¶ 38] The personal representative characterizes these sanctions as a "penalty" and asserts that N.D.C.C. § 28–01–26.1 does not address whether a cause of action or the right to enforce a penalty

against a personal representative survives, but that under common law, a cause of action to enforce a penalty does not survive the death of either party unless the penalty is contractual in nature. The personal representative asserts that even if N.D.C.C. § 27–10–01.4(1) "suggests" that an attorney fee award and a daily "forfeiture" may constitute remedial sanctions, Southeastern's claims are punitive.

[¶ 39] We therefore review whether Southeastern's claim for relief against Alphild Herzig in the form of sanctions under the 2006 contempt orders were extinguished by her death. Since Alphild Herzig did not appeal from the 2006 contempt orders, we will not review in this appeal the district court's decision finding Alphild Herzig in contempt and imposing the sanctions. However, to discuss whether the sanctions against Alphild Herzig abated on her death, it is first necessary to examine the nature of the contempt sanctions imposed by the court under N.D.C.C. ch. 27–10.

[¶ 40] Generally, at common law a cause of action to enforce a penalty "does not survive the death of either party, unless the penalty is contractual in nature. However, causes that are remedial or contractual survive though they may be called penalties in the particular statute." 1 Am. Jur. 2d, *Abatement, Survival, and Revival* § 61 (2005).

> State statutes modifying the common law rules on survival of tort actions have generally enlarged the causes or rights of action that survive. Under some statutes practically all causes of action, including personal torts, that accrue to a decedent during his or her lifetime survive to the decedent's personal representative or to the beneficiaries of his or her estate. Under such a statute an

action in tort survives unless it is specifically exempted from the terms of the statute.

*Id.* at § 66. Courts have held that while sanctions that are penal or punitive abate upon death, sanctions which are civil or remedial do not. *See, e.g., United States v. $84,740.00 Currency,* 981 F.2d 1110, 1113 (9th Cir.1992); *Martindale v. Novello,* 13 A.D.3d 761, 786 N.Y.S.2d 616, 618 (N.Y.App.Div.2004); *see also United States v. Dudley,* 739 F.2d 175, 178 (4th Cir.1984). In *Wasserman v. United States,* 161 F. 722, 723–24 (8th Cir.1908) (citations and quotations omitted), the court of appeals held that proceedings for civil contempt were not abated by the defendant's death inasmuch as the liability of the estate and property of the defendant to pay continued after the property passed to his executors and explained:

> Proceedings for contempts are of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administrative remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect and enforce.

[¶ 41] Courts have inherent powers to impose contempt, although the Legislature may limit the categories to

which contempt orders apply. *Millang v. Hahn*, 1998 ND 152, ¶ 10, 582 N.W.2d 665 (citing *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 203 (N.D.1995)); *see* N.D.C.C. ch. 27–10. Before 1993, this State's contempt statutes described specific conduct that was defined as either "civil contempt" or "criminal contempt." *Johnson v. Johnson*, 527 N.W.2d 663, 665 n. 1 (N.D.1995); *State v. Mertz*, 514 N.W.2d 662, 665–66 n. 2 (N.D.1994). However, in 1993, our Legislature substantially revised the statutes relating to contempt of court, eliminating the specific conduct denominated as either "criminal" or "civil" contempt, redefining the specific conduct generically as "contempt of court," and allowing a court to impose either a "punitive" or a "remedial" sanction for contempt of court. 1993 N.D. Sess. Laws ch. 89; N.D.C.C. ch. 27–10; *see Millang*, at ¶¶ 10–15. A court must first decide whether to apply a remedial or punitive sanction, and then apply the appropriate procedures under N.D.C.C. ch. 27–10 to impose the sanction; however, remedial and punitive sanctions still incorporate traditional civil and criminal contempt characteristics. *Millang*, at ¶ 11. Under N.D.C.C. § 27–10–01.1(1), "contempt of court" is defined to include:

. . . .

    c.  Intentional disobedience, resistance, or obstruction of the authority, process, or order of a court or other officer . . .;

. . . .

    e.  Intentional refusal to produce a record, document, or other object after being ordered to do so by the court;

. . . .

    g.  Any other act or omission specified in the court rules or by law as a ground for contempt of court.

[¶ 42] This case concerns sanctions requiring the payment of money for failure to obey a court order. A punitive sanction includes a sanction requiring payment of a sum of money "if the sanction is not conditioned upon performance or nonperformance of an act, and if the sanction's purpose is to uphold the authority of the court." N.D.C.C. § 27–10–01.1(3). However, a remedial sanction "includes a sanction that is conditioned upon performance or nonperformance of an act required by court order. A sanction requiring payment of a sum of money is remedial if the sanction is imposed to compensate a party or complainant, other than the court, for loss or injury suffered as a result of the contempt." N.D.C.C. § 27–10–01.1(4).

[¶ 43] Under N.D.C.C. § 27–10–01.3(1)(a), the district court "on its own motion or motion of a person aggrieved by contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related." After notice and hearing, the district court may then impose a remedial sanction authorized under N.D.C.C. ch. 27–10. Section 27–10–01.4(1), N.D.C.C., permits the court to impose one or more of the following remedial sanctions:

    a.  *Payment of a sum of money sufficient to compensate a party or complainant, other than the court, for a loss or injury suffered as a result of the contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt;*

    b.  Imprisonment if the contempt of court is of a type included in subdivision b, c, d, e, or f of subsection 1 of section 27–10–01.1. The imprisonment may extend for as long as the

contemnor continues .the contempt or six months, whichever is shorter;

c. *A forfeiture not to exceed two thousand dollars for each day the contempt continues*;

d. An order designed to ensure compliance with a previous order of the court; or

e. A sanction other than the sanctions specified in subdivisions a through d if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt.

(Emphasis added.) Further, under N.D.C.C. § 27–10–01.3(3), any order or judgment finding a person guilty of contempt may be appealed to the Supreme Court, which is a final order or judgment for purposes of appeal. *Glasser v. Glasser*, 2006 ND 238, ¶ 6, 724 N.W.2d 144; *Johnson*, 527 N.W.2d at 665. It is undisputed here that Alphild Herzig did not appeal from the district court's 2006 orders finding her in contempt and imposing sanctions.

[¶ 44] The personal representative argues that, although under N.D.C.C. § 27–10–01.4(1) a daily forfeiture and an award of attorney fees may constitute "remedial sanctions," Southeastern's claims against Alphild Herzig are in fact punitive. The personal representative contends that the amount sought in the 2008 action—$792,600, plus $1,400 a day after February 29, 2008—violates the procedures in N.D.C.C. § 27–10–01.3(1). The personal representative also asserts that sanctions in excess of $1,000,000 sought by Southeastern in this case are far in excess of any loss or injury Southeastern could have sustained as a result of Alphild Herzig's alleged failure to produce information or documents. The personal representative

contends that under N.D.C.C. § 13–02.1–09, which contains the statute of limitations for fraudulent conveyances actions, any failure to provide information or documents of transfers of public record for more than four years before Southeastern's request for production of documents would result in no loss or injury, even if transfers were found to be fraudulent. In arguing the sanctions are penal in nature, the personal representative points out that the amount owed on the foreign judgment filed in North Dakota for enforcement in the 1998 action is substantially less than the amount requested for sanctions, even when including the annual accrual of interest.

[¶ 45] The personal representative argues that the sanctions sought by Southeastern against Alphild Herzig are to penalize her for noncompliance with the district court's prior orders compelling discovery to "coerce her into complying," and since the actions arise from statute, not contract, Southeastern's claims do not survive her death. The personal representative also acknowledges that Southeastern's claims arise from the contempt findings made in proceedings supplemental to the execution of the judgment under N.D.C.C. ch. 28–25, which allows for witnesses and debtors of a judgment debtor to be called to testify on issues relevant to the collection of the judgment. However, as in *Jochim*, 2006 ND 186, ¶ 5, 721 N.W.2d 25, the personal representative contends that Alphild Herzig's death destroys the subject matter that forms the basis for relief and that the cause of action, the right to call Alphild Herzig to testify, and any right to subpoena her to testify and produce documents under N.D.R.Civ.P. 69, lapsed upon her death.

[¶ 46] Here, in the district court's orders substituting Alphild Herzig's personal

representative, which are the subject of this appeal, the court stated, "It is the Court's finding that the sanctions imposed in this case were remedial in nature, and, as such, they do survive Alphild's death." The district court reasoned that the imposition of daily monetary sanctions for each day of Alphild Herzig's failure to comply with the court's discovery order was based on her performance or nonperformance and that the sanctions thus had a coercive purpose to induce Alphild Herzig to comply with the court's previous discovery orders. The district court noted that Alphild Herzig had the means to avoid the sanctions, or at least to limit the amount of sanctions, through her compliance with the court's orders, which support a finding that the sanctions were remedial. The district court also addressed whether the accumulated amount of the sanction was in effect penal, rather than remedial:

> The cumulative amount of daily forfeitures in this case is significantly more than the Judgment amount Southeastern is trying to collect—which would at first blush would [sic] appear to make the sanction punitive, except when Alphild's ability to limit the sanctions at any time by complying with the discovery orders is factored in. While the monetary sanctions may have a punishing result, the statute allowing for the imposition of daily monetary sanctions for failure to comply with discovery orders is not aimed at punishment; rather, its purpose is to induce a party to comply.

Although the district court concluded that the sanctions imposed on Alphild Herzig were remedial in nature, this conclusion is not necessarily dispositive as to whether Southeastern's claims for relief, if any, abated or survived under N.D.C.C. § 28–01–26.1.

[¶ 47] Under N.D.C.C. § 27–10–01.4(1), remedial sanctions may be imposed for contempt, including money damages to compensate a party or complainant *other than the court*, imprisonment, and forfeitures not to exceed $2,000 for each day the contempt continues, in addition to sanctions other than those specified "if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt." One commentator has discussed within the context of our contempt statutes how remedial forfeiture differs from a fine and from money damages: "A forfeiture is unlike a fine, which is punitive in nature, because it is conditional and only accrues so long as the contempt continues. Moreover, unlike money damages, a forfeiture is paid to the court rather than to an aggrieved party." Wayne R. Johnson, *North Dakota's New Contempt Law: Will It Mean Order in the Court?*, 70 N.D. L. Rev. 1027, 1049–50 (1994) (citing Testimony of Gerhard Raedeke, Staff Attorney, Joint Procedure Committee, on H.B. 1077, § IV, 13 (Jan. 11, 1993); Robert J. Martineau, *Contempt of Court: Eliminating the Confusion Between Civil and Criminal Contempt*, 50 U. Cin. L. Rev. 677, 703 (1981) (discussing forfeiture)).

[¶ 48] In both the 1998 and 2008 cases, Southeastern asserts and assumes it is entitled to collect on the entire accumulation of the $1,400 daily sanction. However, the language of the 2006 orders finding Alphild Herzig in contempt and imposing the daily sanctions do not specifically address whether the remedial sanction imposed is "money damages" to compensate Southeastern under N.D.C.C. § 27–10–01.4(1)(a) or a "forfeiture" under N.D.C.C. § 27–10–01.4(1)(c). Indeed, in the 2009 substitution orders, the district court refers to the "cumulative amount of daily

*forfeitures* in this case." (Emphasis added.)

[¶ 49] To determine whether the sanctions imposed on Alphild Herzig constitute a remedial sanction that are intended to indemnify or compensate Southeastern, we look to N.D.C.C. § 27–10–01.4(1)(a), which specifically allows the court to impose money damages to compensate a party or complainant "for a loss or injury suffered as a result of the contempt, including an amount to reimburse the parties for costs and expenses incurred as a result of the contempt." This would necessarily include attorney fees. *See Lauer v. Lauer*, 2000 ND 82, ¶ 11, 609 N.W.2d 450 ("The court, in its discretion, may award attorney fees as part of the compensation to the complainant in contempt proceedings as reimbursement for costs and expenses incurred as a result of the contempt."); *see also Fargo Women's Health Organization v. Larson*, 391 N.W.2d 627, 635 (N.D.1986).

[¶ 50] In the district court's June 26, 2006, order, the court found Alphild Herzig in contempt of court and awarded Southeastern attorney fees in the amount of $5,000. This remedial sanction, plainly awarded in favor of Southeastern, does not abate on Alphild Herzig's death, making substitution of the personal representative proper. However, although the total sanctions amount to a daily sanction of $1,400 in the July 7, 2006, checklist order, the order does not state what portion, if any, constitutes money damages to compensate Southeastern.

[¶ 51] In the substitution orders, the district court correctly characterizes these coercive sanctions as "remedial," for purposes of the appropriate procedures in imposing the sanctions. Nonetheless, this is not an appeal from the 2006 contempt orders, and we are not reviewing the district court's decision to impose contempt or whether proper procedures were followed. We are concerned here with the amount intended to inure to Southeastern's benefit. From the language of the 2006 contempt orders, we are unable to ascertain from the orders what amount constitutes money damages in Southeastern's favor. Further proceedings in the district court are therefore necessary to make factual findings on this issue.

[¶ 52] We affirm the district court's order granting substitution of the personal representative in place of Alphild Herzig. We remand to the district court for further proceedings to make findings as to what portion of the action for sanctions imposed upon Alphild Herzig until her death on June 5, 2008, was specifically to compensate Southeastern under N.D.C.C. § 27–10–01.4(1)(a) and therefore survives her death.

### B. Substitution in 2008 Case

[¶ 53] Although the district court entered an order granting substitution in the 2008 case with practically identical language and reasoning as in the 1998 case, the 2006 contempt orders entered in the 1998 case were not issued as a part of the 2008 case. Rather, the nature of the 2008 case is a separate action brought by Southeastern to collect an alleged debt and to obtain a money judgment against Alphild Herzig for sanctions imposed in the 1998 case under the 2006 contempt orders. As discussed in Part A, the district court will have to determine the final sum of the sanctions imposed in the 2006 contempt orders, which are alleged to compensate Southeastern for Alphild Herzig's contempt.

[¶ 54] The personal representative separately argues several grounds why its

motion to dismiss the 2008 case should have been granted; however, without looking to the specific merits, this action seeks a separate judgment against Alphild Herzig to collect on a debt allegedly owed by Alphild Herzig to Southeastern. Under N.D.C.C. § 28–01–26.1, an action to collect on a purported debt is not listed as one of the exceptions to abatement and thus does not abate on the death of a party.

[¶ 55] We conclude that the district court did not err in substituting the personal representative of Alphild Herzig's estate for Alphild Herzig in the 2008 case. Southeastern's ability to obtain a judgment in the 2008 case, remains largely contingent on the further proceedings on remand in the 1998 case.

## IV. Subject Matter Jurisdiction

[¶ 56] The personal representative argues the district court lacked subject matter jurisdiction in the 1998 case to join Herzig as a defendant in the action, rendering the contempt proceedings in the 1998 case against Herzig void and rendering the claims for relief sought in the 2008 case without legal basis. In support of this argument, the personal representative relies on N.D.C.C. § 28–25–14 and *Feldenheimer v. Tressel*, 6 Dakota 265, 43 N.W. 94 (1889). *Feldenheimer* discusses the differing remedies afforded by proceedings supplementary to the execution and by creditors' bills in courts of equity. 43 N.W. at 95–96. *Feldenheimer* states that "[t]hird persons cannot be made parties to the original suit [by way of supplementary proceedings], though they [can] be compelled to appear and be examined as to any property under their control or in their custody belonging to the defendant, or as to whether they owe him"; explains that "[i]f property belonging to the defendant is found upon such an examination

... it may be ordered turned over to apply on the judgment debt[,] but ... [a] question of title cannot be summarily disposed of by the court or judge [in supplementary proceedings and] ... must be adjudicated and determined by an action brought for that purpose"; and holds supplementary proceedings did not supplant a judgment creditor's right to a separate action to challenge a fraudulent transfer. *Id.* at 96–97. *But see Rutherford v. Kessel*, 560 F.3d 874, 878–879 (8th Cir.2009) (discussing *Feldenheimer* and rejecting the contention that a state trial court lacked jurisdiction over a fraudulent transfer claim simply because the cause of action was not brought in a separate lawsuit, but rather in a post-judgment motion in the same action as the underlying tort action).

[¶ 57] The personal representative essentially contends the district court lacked subject matter jurisdiction to impose the 2006 orders finding Alphild Herzig in contempt and imposing sanctions. "Issues involving subject matter jurisdiction cannot be waived and can be raised sua sponte at any time." *Earnest v. Garcia*, 1999 ND 196, ¶ 7, 601 N.W.2d 260; *see also Lee v. Lee*, 2007 ND 147, ¶ 8, 738 N.W.2d 479. The question of subject matter jurisdiction is a question of law, which we review de novo, when jurisdictional facts are not in dispute. *Harshberger v. Harshberger*, 2006 ND 245, ¶ 16, 724 N.W.2d 148.

For a court to issue a valid order or judgment, the court must have jurisdiction over both the subject-matter of the action and the parties. Subject-matter jurisdiction is the court's power to hear and determine the general subject involved in the action, while personal jurisdiction is the court's power over a party. Although a party may waive the

right to object and voluntarily submit to the personal jurisdiction of the court, subject-matter jurisdiction is derived from the constitution and the laws, and cannot be conferred by agreement, consent or waiver.

For subject-matter jurisdiction to attach, the particular issue to be determined must be properly brought before the court in the particular proceeding. The court may raise the absence of subject-matter jurisdiction at any stage of the proceedings. A judgment or order entered without the requisite jurisdiction is void.

*Albrecht v. Metro Area Ambulance,* 1998 ND 132, ¶ 10, 580 N.W.2d 583 (citations and quotations omitted).

[¶ 58] Enacted in 1877, N.D.C.C. ch. 28–25 governs a proceeding supplementary to execution, which is not an action, but rather "a confirmation of and auxiliary to the original action." *See Mid–Dakota Clinic, P.C. v. Kolsrud,* 1999 ND 244, ¶ 10, 603 N.W.2d 475; *see also American State Bank of Dickinson v. Stoltz,* 345 N.W.2d 365, 367 (N.D.1984). "Section 28–25–01, N.D.C.C., authorizes a court to order a judgment debtor to appear and provide information about her assets after an execution has been returned unsatisfied or when the court determines a judgment debtor is unjustly refusing to apply her property to satisfy the judgment." *Kolsrud,* at ¶ 10.

[¶ 59] An examination under N.D.C.C. § 28–25–03, is conducted before the district court or a referee appointed by the court. Likewise, N.D.C.C. § 28–25–04 provides that "[o]n examination under [N.D.C.C. ch 28–25], either party may examine witnesses in that party's behalf and the judgment debtor may be examined in the same manner as a witness." *See also* N.D.C.C. § 28–25–07 (examination of debtor's debtor). Section 28–25–09, N.D.C.C., states that "[w]itnesses may be required to appear and testify on any proceeding under this chapter in the same manner as upon the trial of an issue." Chapter 28–25, N.D.C.C., also empowers the district court to invoke its contempt powers, stating in part: "If any person, party, or witness disobeys an order of the judge or referee duly served, such person may be punished by the judge as for a contempt...." N.D.C.C. § 28–25–16. Additionally, we have said that under N.D.R.Civ.P. 69 post-judgment discovery is available under our rules without the statutory prerequisite of an execution returned unsatisfied. *Kolsrud,* at ¶¶ 11, 16.

[¶ 60] There can be no dispute here that the district court has the inherent and statutory authority, or subject matter jurisdiction, to impose contempt sanctions against a party or person for violation of a court's prior order. *See Millang,* 1998 ND 152, ¶ 10, 582 N.W.2d 665; N.D.C.C. ch. 27–10; N.D.C.C. § 28–25–16. Generally, this Court has held "the prerequisites for finding a person in contempt of a prior court order are that the court had jurisdiction to issue that order, and the person had actual notice or knowledge of that order." *Bjorgen v. Kinsey,* 491 N.W.2d 389, 395 (N.D.1992) (citations omitted); *see also Dahlen v. Dahlen,* 393 N.W.2d 769, 770 (N.D.1986); *Svihla v. Svihla,* 126 N.W.2d 135, 139 (N.D.1964).

[¶ 61] We have accordingly looked to whether the district court had both subject matter jurisdiction of the action and personal jurisdiction over the defendant. *See Bjorgen,* 491 N.W.2d at 395; *American State Bank of Dickinson v. Stoltz,* 345 N.W.2d 365, 367 (N.D.1984). "[D]isobedi-

ence of an order made without or in excess of jurisdiction is not punishable as contempt," i.e., "it is not contempt to disobey a void order." *Dahlen,* 393 N.W.2d at 770 (citing *In re Kramer,* 75 N.W.2d 753 (N.D. 1956); *Hodous v. Hodous,* 76 N.D. 392, 36 N.W.2d 554 (N.D.1949)). We have also said that court orders may not simply be ignored with impunity. *See Lang v. Basin Elec. Power Coop.,* 274 N.W.2d 253, 258 (N.D.1979).

[¶ 62] In the 1998 case, we are presented with supplementary proceedings to the execution of a judgment under N.D.C.C. ch. 28–25. Although the personal representative asserts that because the 2004 joinder order improperly joined Alphild Herzig as a party and thus all subsequent orders against her as a party must fail, this would not necessarily destroy the district court's subject matter jurisdiction to issue orders compelling discovery in proceedings supplementary to the execution of the judgment. As previously discussed, the district court has the authority under N.D.C.C. ch. 28–25 and N.D.R.Civ.P. 69 to impose certain types of discovery orders against parties and third-persons alike, albeit under different procedural requirements mainly dealing with the court's personal jurisdiction. *Kolsrud,* 1999 ND 244, ¶ 22, 603 N.W.2d 475. Here, the personal representative essentially is arguing that the district court did not have the power or the authority to issue the order compelling Alphild Herzig to provide the requested discovery to Southeastern based on the improper joinder of Alphild Herzig to the post-judgment proceedings. However, regardless of whether Alphild Herzig was properly made a party in 2004, the district court had the authority to issue certain discovery orders involving her, whether or not a party.

[¶ 63] Rule 4, N.D.R.Civ.P., provides the persons over whom the district court may exercise personal jurisdiction. *See Grey Bear v. North Dakota Dep't of Human Servs.,* 2002 ND 139, ¶ 28, 651 N.W.2d 611; *Moon v. Moon,* 499 N.W.2d 597, 599 (N.D.1993). Rule 4(b)(4), N.D.R.Civ.P., states: "A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, *or by voluntary general appearance in an action by any person either personally or through an attorney or any other authorized person.*" (Emphasis added.) This Court has "defined personal service of process as the actual or direct delivery of the summons or a copy thereof to the person to whom it is directed or to someone who is authorized to receive it in his behalf." *Grey Bear,* at ¶ 28 (citing *In re Estate of Ashbrook,* 110 N.W.2d 184, 192 (N.D.1961) (citing 42 Am.Jur. *Process* § 48)).

[¶ 64] "In the absence of a previously made and properly preserved objection to the jurisdiction of the trial court, a general appearance amounts to a waiver of the right to object to the jurisdiction of the court over the person of the appearing party." *Grey Bear,* 2002 ND 139, ¶ 30, 651 N.W.2d 611; *see also Wallwork Lease & Rental Co. v. Schermerhorn,* 398 N.W.2d 127, 129 (N.D.1986). Additionally, the defense of insufficiency of process, under N.D.R.Civ.P. 12(h), is waived if it is not made by a motion or included in a responsive pleading. *Grey Bear,* at ¶ 30 (citing *Messer v. Bender,* 1997 ND 103, ¶ 7, 564 N.W.2d 291).

[¶ 65] On appeal, the personal representative does not argue that the district court lacked personal jurisdiction over Alphild Herzig in issuing its orders. Rather, the personal representative argues that

the district court lacked jurisdiction to compel Alphild Herzig to provide discovery *as a party*, because she was improperly joined. However, the court in proceedings supplementary to the execution of a judgment under N.D.C.C. ch. 28-25 had the requisite subject matter jurisdiction to compel both parties and non-parties to provide responses to discovery. Importantly, Alphild Herzig has not been ordered to pay any portion of the judgment against David Herzig or to turn over any specific property to satisfy any portion of the judgment, nor was she joined to the action as a judgment debtor.

[¶ 66] Beginning as early as 2002, Alphild Herzig was ordered to provide Southeastern with certain discovery, either by court order, or by subsequent requests for production or subpoenas duces tecum. It is undisputed that Alphild Herzig had notice of these efforts to obtain discovery from her at least after her attorney made an appearance in 2004, at the time the orders compelling discovery were subsequently entered, and at the time of the 2006 contempt orders. What Alphild Herzig's personal representative appears to be challenging is whether the court obtained personal jurisdiction over Alphild Herzig in serving the post-judgment discovery.

[¶ 67] Based on our review of the record, we observe that Alphild Herzig's attorney at the time, now the personal representative, made a general appearance after Alphild Herzig was ordered to be joined. We also note that although the pleadings were not subsequently amended adding her as a party or pleading a specific claim against her, Alphild Herzig participated extensively in the discovery process by answering and objecting to discovery requests, responding and opposing motions to compel, and defending against the imposition of contempt and sanctions. Regardless of whether Alphild Herzig was properly made a party to the proceedings supplementary to the execution of the judgment, any argument that the court lacked personal jurisdiction over her based on the lack of or improper service was waived by her attorney's general appearance in the 1998 action, her participation in some discovery propounded by Southeastern, her failure to appeal from the imposition of the contempt sanctions in the 2006 orders and challenge the orders joining her as a party or compelling discovery at that time.

[¶ 68] We therefore reject the personal representative's argument that the district court lacked authority to impose the 2006 orders finding Alphild Herzig in contempt and imposing a daily sanction for failure to adequately respond to discovery, which form the basis of Southeastern's claim for relief against Alphild Herzig. Further, because Alphild Herzig did not appeal from the contempt orders, we will not review the propriety of those orders.

V. Failure to State a Claim
in 2008 Case

[¶ 69] The personal representative argues the district court erred in not dismissing the 2008 case because Southeastern failed to state a claim upon which relief can be granted since there is no actual controversy before the court. The personal representative asserts that Southeastern's claim for relief is not ripe for adjudication in the 2008 case because no final judgment or order has yet been entered in the 1998 case, adjudicating all of the claims, rights and liabilities of the parties in that case. We agree that there is a lack of finality with regard to these issues.

[¶ 70] We have remanded the 1998 case to the district court for factual findings on

Alphild Herzig's liability to Southeastern under the 2006 contempt orders. Further proceedings in the 2008 case will also be necessary in Southeastern's efforts to obtain a judgment on the 2006 orders. We therefore dismiss the personal representative's appeal of the order refusing to dismiss the claims in the 2008 case.

## VI. Petition for Supervisory Writ

[¶ 71] The personal representative also petitioned the Court to grant a supervisory writ in the event we did not dismiss the personal representative and Alphild Herzig from the 1998 and 2008 cases. The personal representative requests this Court to exercise its supervisory authority to reverse the district court's July 2004 "Order on Rule 19(a) Joinder of Party," which purported to join Alphild Herzig "as a party defendant" to the post-judgment proceedings. The personal representative further requests this Court to invalidate all orders in the 1998 action which were entered after entry of the joinder order and to dismiss the 2008 action on grounds the claims for relief are without legal basis. The personal representative argues dismissal is proper because the district court did not have the authority to enter the 2006 contempt orders against Alphild Herzig.

[¶ 72] Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27–02–04, this Court has the authority to issue supervisory writs and may examine a district court decision by invoking our supervisory authority. *Ziegler v. Meadowbrook Ins. Group, Inc.*, 2009 ND 192, ¶ 16, 774 N.W.2d 782; *Forum Commc'ns Co. v. Paulson*, 2008 ND 140, ¶ 8, 752 N.W.2d 177. Our authority to issue supervisory writs is purely discretionary, and cannot be invoked as a matter of right. *Ziegler*, at ¶ 16; *State v. Paulson*, 2001 ND 82, ¶ 6, 625 N.W.2d 528. We

decide whether to exercise our original jurisdiction to issue remedial writs on a case-by-case basis and consider each case's unique circumstances. *Ziegler*, at ¶ 16; *Forum Commc'ns*, at ¶ 8.

[¶ 73] "We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases in which there is no adequate alternative remedy." *Ziegler*, 2009 ND 192, ¶ 16, 774 N.W.2d 782; *Forum Commc'ns*, 2008 ND 140, ¶ 8, 752 N.W.2d 177; *see also State ex rel. Heitkamp v. Hagerty*, 1998 ND 122, ¶ 6, 580 N.W.2d 139. While an exercise of supervisory jurisdiction may be warranted when issues present vital concern regarding matters of important public interest, *Forum Commc'ns*, at ¶ 9; *Mitchell v. Sanborn*, 536 N.W.2d 678, 683 (N.D.1995); we "generally will not exercise supervisory jurisdiction 'where the proper remedy is an appeal merely because the appeal may involve an increase of expenses or an inconvenient delay.'" *Forum Commc'ns*, at ¶ 8 (citations omitted).

[¶ 74] Although the personal representative cites to our decision in *Belden v. Hambleton*, 554 N.W.2d 458 (N.D.1996), as supporting our exercise of supervisory jurisdiction, that case also involved a direct appeal from a nonappealable joinder order. We granted the supervisory writ in part because there was no way for the joined party to test the legality of the claim before the matter went to trial. *Id.* at 461. Here, the personal representative is not appealing from the 2004 joinder order, but rather is seeking to collaterally attack the order in an appeal from the 2009 substitution order, entered almost five years later. In the 2004 order purportedly joining her as a party, Alphild Herzig was neither a party to the underlying North Carolina

action and judgment, nor was she a made a party to the judgment that was filed in North Dakota under N.D.C.C. ch. 28–20.1. Despite being joined as a "party defendant," Alphild Herzig was not made a judgment debtor, nor served any pleading upon her delineating a cause of action or basis of liability. While not named as a judgment debtor, Southeastern's sole "claim for relief" against Alphild Herzig is dependent upon the remedial sanctions imposed on her in the district court's 2006 contempt orders, rather than the 2004 joinder order. We have addressed the district court's jurisdiction to issue the contempt orders in the post-judgment proceedings.

[¶ 75] Contrary to the personal representative's assertions, the district court had subject matter jurisdiction to impose contempt sanctions against Alphild Herzig under N.D.C.C. chs. 28–25 and 27–10. Further, Alphild Herzig failed to appeal the 2006 orders finding her in contempt of court and imposing sanctions, at which point the 2004 order could have also been reviewed. We therefore decline to exercise our supervisory authority within the context of this appeal.

VII. Southeastern's Cross-appeal

[¶ 76] In its cross-appeal, Southeastern argues the district court erred in naming Alphild Herzig's current personal representative as her successor in the 1998 and 2008 cases. Southeastern sets forth a number of reasons why naming the current personal representative was not appropriate, essentially asserting that the personal representative has significant conflicts of interest since the personal representative, as an attorney, had previously represented Alphild Herzig in the post-judgment proceedings giving rise to the contempt sanctions and asserting that the personal representative could be a witness in the matter.

[¶ 77] The personal representative argues, however, that he is "simply the person Ms. Herzig chose to be her personal representative," and any conflicts the personal representative may have do not require that he must be replaced. The personal representative contends he is not contesting the will, not representing the heirs of the estate, not representing anyone in litigation against the estate, and does not have any claims against the estate other than those arising from his service as the personal representative. Further, citing N.D.C.C. § 30.1–12–05, the personal representative contends that the court handling the probate proceedings has exclusive subject matter jurisdiction over issues regarding who should serve as Alphild Herzig's personal representative.

[¶ 78] Here, the parties do not dispute that the current personal representative substituted for Alphild Herzig in the 1998 and 2008 cases has been appointed and remains as the personal representative for Alphild Herzig's estate. Under N.D.R.Civ.P. 25(a), substitution of the personal representative in place of the deceased party is appropriate. *See also Wachter*, 113 N.W.2d at 224. If there is concern with the personal representative's level of entanglement in the prior proceedings and serious potential for conflicts of interest, particularly as an attorney, any petition to remove the personal representative for cause may be brought within probate proceedings in the district court. *See* N.D.C.C. ch. 30.1–17; N.D.C.C. § 30.1–17–11 (providing procedure for petitioning for removal of a personal representative for cause). We therefore conclude, for purposes of the district court's orders granting substitution, the court did

not err in substituting the current personal representative for Alphild Herzig in the 1998 and 2008 cases.

## VIII. Conclusion

[¶ 79] We have considered the remaining issues and arguments raised in the appeal and cross-appeal and determine they are either unnecessary to our decision or without merit. We affirm the district court's 2009 substitution orders in both the 1998 and 2008 cases, which granted substitution of the personal representative of the Alphild Herzig estate for Alphild Herzig. We remand to the district court to determine the amount of remedial sanction necessary to compensate Southeastern under the court's 2006 contempt orders.

[¶ 80] CAROL RONNING KAPSNER, DALE V. SANDSTROM and MARY MUEHLEN MARING, JJ., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 81] I concur with that part of the majority decision concluding the orders granting substitution of parties are not reviewable without N.D.R.Civ.P. 54(b) certification or prior to entry of a final judgment. Majority Opinion at ¶¶ 22–32. I respectfully dissent from the holding in paragraph 33 where the Court proceeds to entertain the merits of this appeal.

[¶ 82] This Court's law on appealability in civil matters has been consistently applied since at least 1993, and arguably since 1989. *See* Majority Opinion at ¶ 32. More than two decades of precedent militate against prospective application of our ruling in this case. *See Vetter v. N.D. Workers Comp. Bureau*, 554 N.W.2d 451, 455 (N.D.1996) (Sandstrom, J., concurring specially) ("I understand the pragmatic

reasons the majority says the law will now be enforced—prospectively. I cannot agree, however, with its legal rationale. This is not *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); we announce no new law. We simply repeat the longstanding requirements of a clear statute.").

[¶ 83] The majority, and I, conclude this case is not appealable. Majority Opinion at ¶¶ 31–32. Without a proper appeal, we have no authority to render a decision. Majority Opinion at ¶ 23; *Steiner v. Ford Motor Co.*, 2000 ND 31, ¶ 4, 606 N.W.2d 881. Therefore, I would dismiss the appeal and not address the merits.

[¶ 84] DANIEL J. CROTHERS