1998 ND 37
### In the Matter of the ESTATE OF Engvald STENSLAND.

Sharon DEIBLER, Co–Personal Representative of the Estate of Engvald Stensland, Plaintiff and Appellant,

and

Sheila Deibler, Co–Personal Representative of the Estate of Engvald Stensland, Plaintiff,

v.

Beryl STENSLAND, Defendant and Appellee.

Civil No. 970252.

Supreme Court of North Dakota.

Feb. 12, 1998.

Smith, Bakke, Hovland & Oppegard, Bismarck, for plaintiff and appellant; argued by Sheldon O. Smith.

Scott J. McDonald (argued), Bowman, for defendant and appellee.

MESCHKE, Justice.

[¶1] Sharon Deibler, a co-personal representative of the estate of Engvald Stensland, appealed a judgment setting the amount of attorney fees and personal representative fees for the estate. We dismiss the appeal for lack of finality for review.

[¶2] When Engvald and Beryl Stensland were married in 1957, each had a daughter from a prior marriage. In 1986, Engvald suffered a stroke, and Beryl was soon appointed his conservator. She acted as his conservator until Engvald's death on August 7, 1991.

[¶3] Engvald's 1981 will gave 320 acres of Bottineau County farmland to his daughter, Sharon Deibler; 160 acres to his granddaughter, Sheila; 160 acres to his grandson; 160 acres jointly to three grandchildren of his wife; and divided all his oil, gas, and minerals equally among his daughter, his two grandchildren, and Beryl's three grandchildren. After these specific gifts valued at over $250,000, Engvald's will gave the rest of his property, inventoried at over $100,000, to his spouse, Beryl. In addition to their jointly-owned home, Engvald also set up various

joint accounts with Beryl and three joint accounts with Sharon.

[¶ 4] The will named his daughter Sharon and granddaughter Sheila as co-personal representatives. After their appointment, Sheila moved to Colorado and gave Sharon a power-of-attorney to act as the sole personal representative.

[¶ 5] Conflicts developed. Beryl sought an elective share of the estate under NDCC 30.1–05–05. Beryl's inadequate accounting of the conservatorship affected compilation of the augmented estate for computing her elective share of the probate estate. Sharon personally sought return of amounts Beryl had withdrawn during her conservatorship from Engvald's joint accounts with Sharon, including interest that should have been earned.

[¶ 6] The trial court ordered Beryl to restore Engvald's joint accounts with Sharon, but eventually allowed Beryl to file a final conservatorship accounting without completely accounting for funds she received from joint accounts with Engvald. Noting Beryl "receives all of the personal property under the terms of the decedent's will," the trial court concluded "[t]here appears to be nothing to be gained in further efforts in obtaining a more accurate accounting" for the conservatorship. In *Matter of Conservatorship of Stensland,* 526 N.W.2d 485 (N.D.1995), we reversed that decision, holding Beryl must provide a complete accounting for the conservatorship in order to seek an elective share of Engvald's estate.

[¶ 7] After remand, Beryl and Sharon continued to wrangle. Eventually, Beryl withdrew her petition for an elective share. Without filing a complete and signed final accounting for the estate, Sharon moved for allowance of attorney fees and for approval to close the probate. Sharon sought personal representative fees of $18,406.25 for herself and $4,688.75 for Sheila, together with $3,011.68 in administration expenses. Her attorney billed the estate for fees of $47,-028.60 and expenses of $4,135.41 for all of his work, but failed to separately itemize his work for Sharon personally to restore her joint accounts. After a contested hearing, the trial court approved only $4,003.50 fees

and $1,281.50 expenses for Sharon, nothing for Sheila, and attorney fees of $26,149.90 and legal expenses of $3,705.61. The court ordered "any amounts paid ... in excess of those amounts [approved] shall be refunded to the Estate ... within thirty (30) days."

[¶ 8] Sharon moved for reconsideration. When Sharon and her attorneys did nothing further, Beryl moved to compel refund of disallowed fees and costs that had been paid, and to obtain post-judgment interest. The trial court denied reconsideration and, on March 26, 1997, ordered the personal representatives and their attorney to immediately repay all amounts beyond those allowed, together with six percent interest after June 30, 1996.

[¶ 9] On May 30, 1997, Beryl caused a judgment to be entered that directed all excessive amounts of fees to be "refunded to the Estate" and allowed interest "to Beryl" at six percent from June 30, 1996 to entry of judgment and at twelve percent thereafter. The judgment directed "the Estate assets shall be distributed in accordance with the Decedent's Will after the necessary transfer of funds and correction of the Final Accounting have been made ... within 60 days of the date of this Judgment...." Without restoring funds or filing a corrected accounting, as directed by the judgment, Sharon appealed for review of "the issues regarding the allowance of attorney's and personal representative's fees and costs."

[¶ 10] Although neither party has questioned the appealability of the judgment, the right to appeal is jurisdictional, and we consider appealability on our own initiative. *Matter of Estate of Zimmerman,* 1997 ND 58, ¶ 4, 561 N.W.2d 642. We use a two step analysis to evaluate finality for review:

> First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b), NDRCivP, must be complied with. If it is not, we are without jurisdiction.

*Gast Constr. Co., Inc. v. Brighton Partnership,* 422 N.W.2d 389, 390 (N.D.1988) (cita-

tions omitted). This judgment does not meet the criteria for review, and we conclude Sharon cannot appeal it. Accordingly, we dismiss the appeal.

[¶ 11] Besides repayment of overpaid fees and interest, the judgment ordered

... the Estate assets shall be distributed in accordance with the Decedent's Will after the necessary transfer of funds and correction of the Final Accounting have been made as outlined above, within 60 days of the date of this Judgment....

No "transfer" or repayment of fees has been made, and no corrected final accounting has been filed or approved. At oral argument, both counsel so acknowledged. NDCC 30.1–21–02 authorizes a personal representative "under an informally probated will or any devisee under an informally probated will" to petition for an order of settlement of an estate. Then, "the court [is] to consider the final account or compel or approve an accounting and distribution." *Id.* "After notice to all devisees," and hearing, "the court may enter an order ... on appropriate conditions, determining the persons entitled to distribution of the estate under the will, and, as circumstances require, approving settlement and directing or approving distribution of the estate...." *Id.*[1] *Compare,* under previous probate code, *In Re Anderson's Estate,* 76 ND 163, 34 N.W.2d 413, 417 (1948)("Final account and settlement are conditions prerequisite to the issuance of a final decree.").

[¶ 12] Because a correct final accounting has not been filed or noticed to those interested in this estate, the effects of repayment of overpaid fees and expenses on the residual distribution are unknown. Thus, we are unable to conclude no more disputes remain to be resolved. As explained in *Matter of Estate of Stuckle,* 427 N.W.2d 96, 101 (N.D. 1988) (Meschke, J., concurring), "an intermediate order or judgment leaving claims unadjudicated in the trial court will not normally be considered on appeal." Like other civil cases, a probate case needs a final decision for an appeal.

[¶ 13] In other probate cases, we have discussed the relationship between final decisions and N.D.R.Civ.P. 54(b). *See First Trust Co. of North Dakota v. Conway,* 345 N.W.2d 838, 842 (N.D.1984) (a final order or judgment is needed to appeal in a probate). *Stuckle,* 427 N.W.2d at 102 (Meschke, J., concurring), explained how finality can vary under different sections of the Uniform Probate Code. *Compare Matter of Estate of Sorensen,* 406 N.W.2d 365 (N.D.1987)(appeal in a supervised administration of a probate estate) *with Stuckle* (appeal in an unsupervised administration other than a formal testacy order). Here, as in *Stuckle,* we are asked to review an intermediate order in an unsupervised probate.

[¶ 14] An unsupervised probate, governed by NDCC ch. 30.1–14, is called informal and "each proceeding before the court is independent of any other proceeding involving the same estate." NDCC 30.1–12–07. Sometimes, an order in an unsupervised probate can be appealable without a N.D.R.Civ.P. 54(b) certification, unless the order decides some, but not all, of one person's disputes in an estate.[2] *Zimmerman,*

1. *See also* NDCC 30.1–21–01(*"Formal proceedings terminating administration—Testate or intestate—Order of general protection."*); 30.1–21–03(*"Closing estates—By sworn statement of personal representative."*); and 30.1–21–03.1(authorizing closing procedures when personal representative fails to act, including award of attorney fees and costs in favor of a petitioner from a dilatory personal representative).

2. We have sometimes retained jurisdiction of an appeal and remanded for the trial court to consider a N.D.R.Civ.P. 54(b) certification. *See Courchene v. Delaney Distributors, Inc.,* 418 N.W.2d 781 (N.D.1988). In a proper case under Rule 54(b), a court may direct entry of a final judgment of one or more, but not all, claims or parties. N.D.R.Civ.P. 54(b). Then the judgment may be considered on appeal. For an example, see *Courchene,* 421 N.W.2d 811 (N.D.1988). *But see,* many decisions concluding that a Rule 54(b) certification was improvidently made: *Wyatt v. Adams,* 551 N.W.2d 775 (N.D.1996); *Gessner v. City of Minot,* 529 N.W.2d 868 (N.D.1995); *Ingalls v. Glass Unlimited, Inc.,* 529 N.W.2d 872 (N.D.1995). "A Rule 54(b) determination and direction ... should not be routine" and "piecemeal appeals should not be encouraged without appropriate reason." *Stuckle,* 427 N.W.2d at 103 (Meschke, J., concurring). Only infrequently have we retained jurisdiction and remanded for a Rule 54(b) certification. In this case, no extraordinary reasons justify a temporary remand for the trial court to consider a Rule 54(b) certification.

1997 ND 58, ¶ 5, 561 N.W.2d 642 (citing *Matter of Estate of Zimbleman,* 539 N.W.2d 67, 70 (N.D.1995)). As explained in *Stuckle,* 427 N.W.2d at 103 (Meschke, J., concurring), however, when interrelated claims remain to be resolved in an unsupervised probate, the order or judgment is not final for review.

[¶ 15] Thus, in *Matter of Estate of Voeller,* 517 N.W.2d 631 (N.D.1994), we considered an appeal from a partial summary judgment denying the personal representative's late "Petition for Probate of a Codicil." We concluded "[d]istribution of the estate has not been approved; discharge of the personal representative is not final; no Rule 54(b), NDRCivP, certification has been made." 517 N.W.2d at 632. We dismissed the appeal for lack of finality. *Id.* Here, while the allowable amount of attorney fees and administration expenses was decided, the funds have not been marshaled and a corrected accounting for distribution of the estate has not been prepared, filed, and approved by the trial court. As in *Voeller,* this is an intermediate judgment and not appealable.

[¶ 16] The lack of a final accounting and petition for distribution does not always make an order or judgment in a probate interlocutory. For example, in *Schmidt v. Schmidt,* 540 N.W.2d 605, 607–08 (N.D.1995), we noted "the final accounting and distribution [not yet completed] were not related pending claims which would defeat finality of the probate court's order resolving the contract for deed issues." We explained, "an order settling all claims of one claimant is final, even if there are pending claims by other claimants." *Id.* at 607. *See also Jarmin v. Shriners Hosp. for Crippled Children,* 450 N.W.2d 750, 751 (N.D.1990) (finality of an appeal of the removal of a personal representative not affected by a separate proceeding on final accounting). However, in this case, the lack of a final accounting is entangled with the repayment and redistribution of amounts overpaid to the personal representatives and to their attorney. Sometimes a distributee may be directly liable to other claimants in an estate. *Ohnstad Twichell P.C. v. Treitline,* 1998 ND 10, ¶ 7. This judgment does not settle all related disputes, but leaves open more litigation between the same litigants, and perhaps other devisees, and augurs more appeals.

[¶ 17] We conclude the trial court's May 30, 1997 judgment leaves potential interrelated disputes unsettled and lacks finality. While some amounts have been approved, corrective actions, a corrected final account, and the petition for distribution have not been filed nor approved by the trial court. Potential additional disputes remain.

[¶ 18] We dismiss this appeal.

[¶ 19] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.