2014 ND 29

**In the Matter of the ESTATE of Virgil N. HUSTON, Deceased.**

**Wilma J. Russell, Petitioner and Appellee**

v.

**Virgil N. Huston, Jr., Valarie J. Huston, James J. Huston, Respondents.**

**James J. Huston, Appellant.**

**No. 20130126.**

Supreme Court of North Dakota.

Feb. 13, 2014.

Judith E. Howard and Diane K. Lautt, Minot, N.D., for petitioner and appellee; submitted on brief.

James J. Huston, self-represented, Bismarck N.D., appellant; submitted on brief.

CROTHERS, Justice.

[¶ 1] James Huston appeals from an order denying his petition to remove Wilma Russell as personal representative of Virgil Huston's estate and from an order denying Russell's petition ·to determine Virgil Huston's heirs. We dismiss the appeal from the order denying Russell's petition to determine the heirs and affirm the order denying James Huston's motion to remove Russell as the estate's personal representative.

I

· [¶ 2] Virgil Huston died intestate in 2000, while domiciled in Wyoming. He was survived by his wife, Russell, and three children from a previous marriage, including James Huston. Virgil Huston's estate was not probated at the time of his death. According to Russell, Virgil Huston's church paid for his funeral and the only known property owned by him when he died was a car worth $200.

[¶ 3] Russell later learned Virgil Huston owned mineral rights in McKenzie County. In November 2012, Russell applied for appointment as personal repre-

sentative for the unsupervised administration of Virgil Huston's estate, and the district court appointed her as personal representative of the estate. Russell gave notice of her appointment to Virgil Huston's three children, including James Huston, and James Huston requested notice and information relating to the probate of his father's estate. Russell filed an inventory and appraisement of Virgil Huston's estate, identifying eight net mineral acres in McKenzie County with a value of $160 at the time of his death.

[¶ 4] In March 2013, Russell moved under N.D.C.C. § 30.1–21–01 for a determination of heirs and distribution of an intestate estate, contending the total value of Virgil Huston's estate was less than $100,000 and seeking an order distributing all property, including the mineral rights, to her as an intestate share to a surviving spouse under N.D.C.C. § 30.1–04–02(4).

[¶ 5] James Huston petitioned for removal of Russell as personal representative of the estate and for appointment of a special administrator, alleging Virgil Huston's three children were entitled to a portion of the estate, including the mineral rights. James Huston claimed the district court had not been informed that he and Russell each signed March 2005 oil and gas leases for the mineral interests, that a well has been producing oil from his father's mineral interests since January 2012 and that possibly more than $500,000 in proceeds from the well is being held by an oil company in suspense in a trust account. He claimed the estate was worth more than the value assigned to it by Russell and may be worth more than $100,000. He asserted an emergency existed and appointment of a special administrator was necessary to preserve the estate.

[¶ 6] The district court denied Russell's motion for a determination of heirs and denied James Huston's petition to re-

move Russell as the personal representative. In denying James Huston's petition, the district court explained there was no wrongdoing by Russell necessitating appointment of a different personal representative. The court determined the estate value was $160 when Virgil Huston died and, under the current law of intestacy, the surviving spouse was entitled to the first $100,000 from the estate.

## II

[¶ 7] James Huston appealed from the order denying Russell's petition to determine heirs and from the order denying his petition to remove Russell as personal representative and to appoint a special administrator. He argues Russell failed to account for various items of estate property and Virgil Huston's children are entitled to a portion of the mineral rights. Russell responds the orders are not appealable because the district court did not certify them as final under N.D.R.Civ.P. 54(b), and even if the orders are appealable, the court did not err in issuing those orders.

[¶ 8] We initially consider the jurisdictional issue raised by Russell. This Court's two-step framework for addressing appealability is well-established:

"First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b), NDRCivP, must be complied with. If it is not, we are without jurisdiction."

*In Matter of Estate of Stensland,* 1998 ND 37, ¶ 10, 574 N.W.2d 203 (quoting *Gast Constr. Co., Inc. v. Brighton P'ship,* 422 N.W.2d 389, 390 (N.D.1988)).

[¶ 9] In *Stensland*, we explained that framework in the context of an appeal in an unsupervised probate:

"An unsupervised probate, governed by NDCC ch. 30.1–14, is called informal and 'each proceeding before the court is independent of any other proceeding involving the same estate.' NDCC 30.1–12–07. Sometimes, an order in an unsupervised probate can be appealable without a N.D.R.Civ.P. 54(b) certification, unless the order decides some, but not all, of one person's disputes in an estate. [*Estate of*] *Zimmerman*, 1997 ND 58, ¶ 5, 561 N.W.2d 642 (citing *Matter of Estate of Zimbleman*, 539 N.W.2d 67, 70 (N.D.1995)). As explained in [*Estate of*] *Stuckle*, 427 N.W.2d [96,] 103 [ (N.D. 1988) ] (Meschke, J., concurring), however, when interrelated claims remain to be resolved in an unsupervised probate, the order or judgment is not final for review."

1998 ND 37, ¶ 14, 574 N.W.2d 203 (footnote omitted).

### A.

[¶ 10] As relevant to this unsupervised probate proceeding, N.D.C.C. § 28–27–02 generally authorizes appeals from final orders affecting substantial rights, or involving the merits of the action. *See In re Estate of Eggl*, 2010 ND 104, ¶ 6, 783 N.W.2d 36. The district court's order denying Russell's petition to determine heirs stated:

"I make no 'determination' as to who is an heir, or even whether or not there was a will. I simply note that [the personal representative] made the proper statements in her application, and I appointed her personal representative.

"As an aside, if the personal representative does want me to determine that the deceased died intestate, and further determine who are the heirs, I will glad-ly do so upon a formal motion (formal requiring publication). Then after a noticed hearing, the Court will indeed be in the position to 'determine' these things. In the meantime, the motion is DENIED."

[¶ 11] The district court's order indicates it is not final and further proceedings regarding intestate succession and the determination of heirs may be necessary. We conclude an appeal from that order is not authorized by N.D.C.C. § 28–27–02. We therefore conclude James Huston's attempted appeal from the order denying Russell's petition to determine heirs is not properly before us, and we dismiss that appeal.

### B.

[¶ 12] James Huston also has appealed from the order denying his petition to remove Russell as personal representative of his father's estate. In *Estate of Shubert*, 2013 ND 215, ¶¶ 22–25, 839 N.W.2d 811, we considered an appeal from an order denying a petition to remove a personal representative in the unsupervised probate of two estates. We concluded the appeal was authorized under N.D.C.C. § 28–27–02 without a certification of finality under N.D.R.Civ.P. 54(b). *Shubert*, at ¶ 25. Similarly, James Huston's appeal from the order denying his petition to remove Russell as personal representative of his father's estate is appealable without a certification under N.D.R.Civ.P. 54(b).

### III

[¶ 13] In *Shubert*, we discussed the framework for analysis of a petition to remove a personal representative:

"Under N.D.C.C. § 30.1–17–11, a person interested in an estate may petition for removal of a personal representative for cause, which exists when removal is

in the best interest of the estate, the personal representative has intentionally misrepresented facts leading to appointment, the personal representative has disregarded court orders, the personal representative has become incapable of discharging the duties of the office, or the personal representative has mismanaged the estate or failed to perform any duty pertaining to the office. A decision on a petition to remove a personal representative lies within the discretion of the district court. *Estate of Hass,* 2002 ND 82, ¶¶ 10, 12, 643 N.W.2d 713 (holding district court did not abuse discretion in refusing to remove personal representative). A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *In re Conservatorship of T.K.,* 2009 ND 195, ¶ 10, 775 N.W.2d 496."

2013 ND 215, ¶ 27, 839 N.W.2d 811.

[¶ 14] In denying James Huston's petition to remove Russell as personal representative of his father's estate, the district court explained:

"Even assuming all of [James Huston's] allegations, I see no wrongdoing on the part of the personal representative and certainly nothing that would cause the Court to appoint a different personal representative.

"Leases of small interests are common based only on 'Affidavits of Heirship.' The oil companies lease potential heirs and if there is production, they hold back payments until probates are concluded, just as happened here.

"It has been over three years since the date of death of Mr. Virgil N. Huston, so the personal representative only has power to confirm title to property that transferred at the moment of his passing.

"[James Huston] is in error in thinking that he and his siblings would have inherited 2/3 of the minerals. He cites in his brief on the personal representative's motion for determination that *Frandson v. Casey,* 73 N.W.2d 436 (N.D. 1955), stands for just that proposition. *Frandson v. Casey* dealt with a death in 1932, at which time there would have been a 2/3 (kids), 1/3 (spouse) breakdown. But Virgil N. Huston died in 2000, and the laws of intestacy had changed. They are correctly stated by the personal representative. The spouse gets the first $100,000.00.

"Further, the personal representative correctly states that the value of the minerals for this purpose is the value at date of death, and the only valuation in this file is that they were worth $160.00 in 2000.

"So, as the personal representative has correctly stated the law and has done nothing inappropriate, even if not dismissed on procedural grounds, the petition [for removal of the personal representative] is dismissed on its merits."

[¶ 15] The district court did not misapply the law and provided a reasoned explanation for its determination not to remove Russell as personal representative of the estate. The court's decision is not arbitrary, unconscionable or unreasonable, and we conclude the court did not abuse its discretion in denying James Huston's petition to remove Russell as personal representative. We therefore affirm the order denying James Huston's petition to remove Russell as personal representative of Virgil Huston's estate.

IV

[¶ 16] We dismiss James Huston's appeal from the order denying the determi-

nation of heirs, and we affirm the order denying his petition to remove Russell as personal representative of the estate.

[¶ 17]  GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, S.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.

[¶ 18]  The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision.   Surrogate Judge MARY MUEHLEN MARING, sitting.