# IN THE COURT OF APPEALS OF IOWA

No. 17-1722
Filed February 7, 2018

**IN THE INTEREST OF B.B.,**
**Minor Child,**

**D.B., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

A father appeals from the termination of his parental rights to his child. **AFFIRMED.**

Bryan J. Tingle of Tingle Law Office, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Kayla Ann J. Stratton of the Juvenile Public Defender Office, Des Moines, guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge.**

A father appeals from the termination of his parental rights to his child, B.B., pursuant to Iowa Code section 232.116(1)(h) (2017).[1]  The father contends there is not clear and convincing evidence supporting the grounds for termination and the juvenile court failed to consider the factors and exceptions set out in section 232.116(2) and (3).  Due to the father's lack of progress during the pendency of this matter, we affirm the termination of the father's parental rights.

B.B. was born in February 2016 and was removed from the parents' care shortly thereafter.  During the pendency of this matter, B.B. remained in foster care and the father did not progress past supervised visitation.  The Family Safety, Risk, and Permanency consultant who facilitated the father's visitation testified to the ongoing issues with the father's behavior affecting his ability to safely parent B.B.  The consultant explained, "[T]ypically if I have to step in or intervene or provide a suggestion as to another way of doing things [the father] will get easily agitated, he doesn't take redirection well from me."  The consultant stated she has had to provide direction to the father regarding nutrition and safety and observed the father has difficulty balancing his time between his older child and B.B.

The consultant also stated there were concerns of domestic abuse in the mother and father's relationship.  Although the parents informed service providers they were no longer having contact, the mother testified her relationship with the father had continued throughout the pendency of the matter and ended just one week prior to the first day of the combined termination and permanency hearing.

---

[1] The mother's parental rights were also terminated, and the termination was upheld on appeal.  *See In re B.B.*, No. 17-1081, 2017 WL 4051003 (Iowa Ct. App. Sept. 13, 2017).

The mother admitted she had not been honest with service providers regarding her ongoing contact with the father. The mother also admitted she had not been forthcoming with service providers about instances of domestic violence perpetuated by the father against her during their relationship. The father also admitted at the hearing that he had manipulated people by being untruthful during the pendency of the case.

In a psychological evaluation of the father, it was reported the father "has a long history of problems with authority, dysfunctional relationships, and impulsive behavior. He has little insight into [how] his own behavior contributes to the problems he experiences in life. He has difficulty understanding healthy boundaries and an even greater difficulty with setting boundaries in his intimate relationships." The evaluation also reported the father's Child Abuse Potential Inventory was moderately elevated in the areas of "impulse control, denial, current [department of human services] involvement, low frustration tolerance, antisocial attitudes, resistance to authority, difficulties with empathy, and lack of understanding of normal childhood development." The department of human services (DHS) was cautioned against allowing service providers to meet alone with the father or in his home "due to the concerns of his tendency to physically confront to control situations when he feels challenged."

After a combined termination and permanency hearing held in April 2017, the juvenile court ordered termination of the father's parental rights to B.B. pursuant to Iowa Code section 232.116(1)(d) and (h). After the father filed a motion to reconsider, enlarge or amend the termination order contending termination under section 232.116(d) was improper, the court entered an order on October 12,

2017, amending its ruling and terminating the father's parental rights pursuant to section 232.116(1)(h) alone. The father appeals arguing there is not clear and convincing evidence supporting the grounds for termination and maintaining the juvenile court failed to properly consider section 232.116(2) and (3)(c). The father asserts the court should have granted him six additional months to seek reunification with B.B.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). There are grounds for termination under section 232.116(1)(h) where the court finds the child is three years of age or younger; has been adjudicated a child in need of assistance (CINA); has been out of the parent's care for at least six of the last twelve months, or for the last six consecutive months; and there is clear and convincing evidence the child cannot be returned to the parent's care at present. It is undisputed at the time of the termination/permanency hearing B.B. was under the age of three, was adjudicated a CINA, and had been out of the father's care for fourteen months—well beyond the statutory time frame. As to the inability to safely return B.B. to the father's care, the juvenile court found:

> [B.B.] cannot be returned to [the father]'s custody as there has been no change that the court can discern that would lead the court to believe that domestic violence, manipulation, and impulsive behavior will not be a part of his life. . . . The parents' behavior during the course of this case is the best predictor of future behavior. The lack of progress in effecting a change in behavior, their lack of insight, lack of consistency, as well as the proclivity toward dishonesty and manipulation leads the court to find that an additional six months would not make a difference.

We agree. In the approximately two years that this matter was pending, the father was unable to participate in DHS services without conflict and manipulation

and to progress beyond supervised visitation with B.B. in a public location. There is clear and convincing evidence that B.B. could not be returned to the father's care at the time of the termination and permanency hearing. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("[I]n considering what the future holds for the child if returned to the paren[t] . . . we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997))).

The father seeks an additional six months. Time "is a critical element" in termination proceedings, and after the statutory time period for termination has passed, termination is viewed with a sense of urgency. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Children are not equipped with pause buttons. *See In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."). Before the court can grant a parent additional time, there must be an assurance that the need for removal will no longer exist at the end of that time period. *See* Iowa Code § 232.104(2)(b). Considering the father's lack of progress during the course of this case, we, like the juvenile court, are unconvinced that this would be the case here. *See C.B.*, 611 N.W.2d at 495 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)); *see also A.M.*, 843 N.W.2d

at 112 (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home).  The lack of progress by the father in this case supports the juvenile court's finding that an additional six months will not allow for the safe reunification of B.B. to the father's care.

We also conclude termination of the father's parental rights is in B.B.'s best interests.  B.B. has waited long enough for the father to exhibit an ability to control his behavior and safely parent B.B.  B.B. deserves permanency.  *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").  Although the record reveals a bond between the father and B.B., it also indicates B.B. is bonded to the foster parents. The evidence does not suggest the parent-child bond is so strong as to outweigh the need for termination of the father's parental rights under section 232.116(3)(c).

We therefore find there are grounds for termination of the father's parental rights pursuant to section 232.116(1)(h), termination is in B.B.'s best interests, and no section 232.116(3) factor precludes the need for termination.  We affirm.

**AFFIRMED.**